# Bewley *versus* Tams.

Two partners took from a lessee an assignment of a lease of rooms in a building, and put therein a steam-engine.   Subsequently, S. one of the partners, without the authority or knowledge of the other, executed a *sealed* agreement, leasing to the plaintiffs a part of the premises, with the right of attachment to the steam-engine to the extent of eight horse power, the occupancy to continue for three months longer than the term of the original lease. Soon after the execution of the sealed lease, the other partner sold his interest in the partnership to T.; and S. and T. continued in the occupancy of the building till the termination of the original lease, T. receiving from the under-lessees, the plaintiffs, the rent from time to time during the existence of the original lease, except the rent for the last quarter.   After its termination S. and T. removed the engine to another building.   An action *of assumpsit* was brought by the under-lessees under the sealed lease, against S. and T. for damages for reduction of the power, and also for the removal of the engine, the declaration alleging the sealed agreement, and that by the transfer T. assumed the obligations of the former partner under the sealed lease by S.; but not averring that it was rescinded, or that any new contract, to the same effect as the sealed contract, was made by S. and T.: It was *held*, that no such new contract was to be implied against T. the incoming partner, from his receipt of the rent; that none such was to be inferred from the partnership; that the sealed agreement by the one partner was not evidence in the suit; and that no cause of action against the defendants was stated in the declaration.

THIS case came up from the *Nisi Prius, Philadelphia.*

This was an action of *assumpsit* brought by Bewley & Vanhorn to recover damages from the defendants, Tams & Sloat, for an alleged breach of contract.

2 s 2

[Bewley *v.* Tams.]

On the 20th of December, 1843, one Thomas Matlack rented to one James G. Wilson certain rooms in a building situate in the county of Philadelphia, at the north-west corner of Schuylkill Eighth and Hamilton streets, for the term of three years, *ending December 20th*, 1846.

Some time prior to the 30th of January, 1845, James G. Wilson assigned *his interest in the lease* to George B. Sloat, one of the above defendants, and Don Carlos Enos, who carried on the business of manufacturing flooring boards.

George B. Sloat, on the 30th of January, 1845, made, executed, and delivered to the plaintiffs, *Bewley & Vanhorn*, a sealed lease, which was signed and sealed by Sloat for himself and for Enos, Sloat using Enos's name without any authority from Enos, and without the latter knowing that such had been done, until after he had ceased to be a partner with Sloat. *This lease was to continue till 16th March*, 1847. The rent of the rooms was to be $125 per quarter, and $8 per week for the use of the steam-power. The plaintiff leased a *part of the building* and a portion of the steam-power, equal to an eight horse power, for their business of pulverizing spices, &c., and manufacturing drugs, &c.

Some time in May, 1845, Enos sold out to William Tams, one of defendants, his interest in the partnership with Sloat, and thereupon the business of Sloat & Enos was conducted by Tams & Sloat. Tams regularly received the stipulated rent from Bewley & Vanhorn, the under-lessees, until about the 16th of December, 1846, *the last quarter's rent, due December sixteenth*, 1846, never having been paid by plaintiffs.

At the time that Enos went out of the firm of Sloat & Enos, he introduced Tams to Bewley & Vanhorn, the plaintiffs, and stated to Tams that they were tenants of Sloat & Enos, and were to pay such an amount of rent, but nothing was said about a lease having been given by Sloat & Enos to them.

Plaintiffs alleged that some time in October, 1846, defendants shortened the time from ten hours a day to seven and a half hours; and on the 16th December, 1846, *defendants* removed altogether from the building in which, up to that day, they had carried on their business, to a new building which Tams had erected, and the steam-engine was removed to that building. Plaintiffs were thus left without steam-power theretofore furnished by *defendants*, from the said 16th December, 1846, to 16th March, 1847, *on which day the lease from Sloat or from Sloat & Enos* to plaintiffs ended.

The action was brought by plaintiffs to recover from defendants damages for the partial loss of the steam-power from October to December 16, 1846, and for the total loss of it from December 16, 1846, to March 16, 1847.

The cause was tried before BURNSIDE, J., on the 11th of April,

[Bewley *v.* Tams.]

1850, when the plaintiffs to maintain their action gave in evidence among other things :

1. The sealed lease from Sloat & Enos to them. Objected to by defendants on the ground that as the suit was in case, it was not admissible under the pleadings in the cause. The objection was overruled, and exception on part of defendants.

2. Sundry receipts for rent given by defendants to plaintiffs. Objected to by defendants because they did not show a new contract on the part of defendants, and because they were not evidence of a new consideration received by them, and because they were inadmissible, under the pleadings in the cause. Objection overruled and exception taken.

3. A record of a suit brought in the District Court by Sloat & Enos to the use of Tams & Sloat against Bewley & Vanhorn. Objected to by defendants. because it did not show a new contract entered into by defendants with plaintiffs. Objection overruled and exception taken.

Upon the plaintiffs closing their evidence, the counsel for defendants asked the judge to enter a nonsuit, on the ground that there was no new consideration shown to have passed from plaintiffs to defendants so as to authorize them to maintain their suit in *assumpsit;* which the judge refused to do, as he considered the receipt of rent by defendants to be evidence of a new consideration on their part. Defendant's counsel excepted.

The defendants then proceeded with their evidence, which was for the purpose of proving that the steam-power had not been shortened from October, 1846, to December 16, 1846, against the consent of plaintiffs ; that full time had been given, except on such days as plaintiffs had allowed the time to be shortened. But the defendants did not attempt to deny that there was a total loss to plaintiffs of steam-power from December 16, 1846, to March 16, 1847.

After the evidence was closed, defendants' counsel submitted to the court certain points in writing. They were as follows :—

1. There is no evidence in the cause that the *sealed contract*, dated January 30, 1845, mentioned in the declaration, was not in force and effect at the time of the alleged breaches of the supposed promise and undertaking in the declaration contained.

2. That George B. Sloat, one of the defendants, being responsible to the plaintiffs under the *sealed contract*, the present action cannot be maintained against him, he being liable, if at all, only in an action on the sealed contract.

3. That this action cannot be maintained against Tams & Sloat without proof of a *new joint agreement*, entered into with the plaintiffs by Sloat as well as Tams upon a *new consideration* moving to them both, to perform the terms stipulated in the said sealed contract, to be performed by Sloat & Enos.

[Bewley *v.* Tams.]

4. That there is no evidence in the cause of any such new agreement by Tams & Sloat, or of any *new consideration* therefor.

5. That such new agreement by Tams & Sloat, to perform the terms stipulated in the said sealed contract to be performed by Sloat & Enos, cannot be inferred from Tams taking the place of Enos in the concern, nor from the action brought by Tams & Sloat against the plaintiffs, which has been given in evidence, nor from Tams & Sloat recognising them as their tenants.

6. That the receipt of rent by Tams & Sloat from the plaintiffs, was not a new consideration for any such new agreement, even if such agreement were made.

7. That the new agreement upon which the defendants could be held liable in this action, would be an agreement to perform the terms stipulated in the said sealed contract. Consequently, before defendant Tams can be held to have made such agreement, it ought distinctly to appear in proof, that he knew the terms of the said sealed contract, or expressly stipulated to perform the same.

8. That the plaintiffs are not entitled to recover in this action.

The judge charged the jury, *inter alia,* as stated in the assignments of error; also, that if the jury find there have been breaches of this agreement, the plaintiffs are entitled to recover.

Defendants' counsel excepted to the charge.

Verdict was rendered for plaintiffs for $1500.

Error was assigned:—1. To the admission in evidence of the agreement or lease under seal.   2. To the admission of the receipts for rent.   3. To the admission of the record of the suit in District Court, in the name of Sloat & Enos to the use of Tams & Sloat against Bewley & Vanhorn.   4. That the court refused the nonsuit.   5. Because the judge charged that the receipt of rent from plaintiffs by defendants, was evidence of a new consideration and of a new parol contract between plaintiffs and defendants. 6. Because he charged that *Tams* was liable in conjunction with Sloat for all damages that plaintiffs may have suffered, and that defendants could be held responsible for such damages in the action brought by plaintiffs.   7. Because he charged that the action brought by plaintiffs was the proper action, and that the evidence given by them was properly given in the same, and under the pleadings in the cause.   8. Because he refused to charge the jury as requested by defendants in the written points submitted by them.

The case was argued by *Campbell* on the part of the defendants in the suit.

*Titus* and *Brown* for the plaintiffs in the suit.

*McCall* in reply.—The action should have been in covenant

[Bewley *v.* Tams.]

against Sloat alone—Tams never entered into any contract with the plaintiffs. The suit was not founded on any new contract.

The opinion of the court was delivered March 22, by

BLACK, C. J.—Sloat and Enos were patent planers, and carried on their business as partners in a building for which they had a lease extending to the 20th of December, 1846. There being more room in the building than was necessary for their own purposes, Sloat, without the authority or knowledge of Enos, sub-let a part of it to Bewley & Vanhorn, the plaintiffs, until the 16th of March, 1847—a time which reached three months beyond the period of the lease which Sloat & Enos themselves had. The lease made by Sloat to the plaintiffs was *under seal,* and among other covenants it contained one for an attachment of eight horse power to Sloat & Enos's engine. The plaintiffs were grinders of medicines and spices. Enos soon after sold out his interest to Tams, and the business was carried on by Tams & Sloat until the 20th December, 1846, when they were compelled by the owner of the property to quit possession, and carry away their engine. This suit is brought in *assumpsit* to recover damages for a failure to supply as much steam-power as ought to have been furnished before the 20th December, 1846, and for neglecting or refusing to supply any at all between that time and the 16th of March, 1847.

Unless the sealed agreement which the plaintiffs had with Sloat was rescinded, and a new parol contract to the same effect was made by the defendants jointly upon a sufficient consideration moving to them, then this action is incurably wrong, and the trial ought to have been stopped as soon as it began. Of course the learned and able counsel of the plaintiffs do not assert that they can maintain *assumpsit* on a sealed instrument, much less that they have a right to recover in such an action against two on a covenant made only by one. Their argument is that the covenant was cancelled, and a parol contract substituted in its place.

But this is a clear mistake. The plaintiffs accepted the lease as it was executed by Sloat alone, with full knowledge that Enos had no part in the making of it. They treated it as *the* contract; paid their rent in accordance with it; were sued on it, and made no objection to its validity. What is more, they set forth that same lease in the declaration before us, and do not aver that it was ever rescinded, or that any other contract was ever made in its place by the defendants. It was the only evidence they produced to show that they had a right to be supplied with steam-power ; and between its four corners was the only bargain on the subject.

The declaration avers that Tams, upon coming into partnership with Sloat, assumed all the rights, obligations, and liabilities of Enos. It will be remembered that Tams did not assume those

VOL. V.—62

[Bewley *v.* Tams.]

liabilities *by an express contract.* We are asked to infer it. We cannot presume it from the naked fact that he succeeded Enos in the partnership with Sloat. It has never been thought that a man, who buys himself into another's business, subjects himself to the liabilities which that other may have incurred previously; nor that a new firm is bound by law to pay the debts or comply with the contracts of an old one composed partly of the same members. But if this position were conceded to the plaintiffs, their argument would be none the better of it; for Enos himself was clearly not liable here.

It is insisted that the receipt of the rents by Tams & Sloat, was equivalent to the rescission of the written lease, and the making of a new joint contract by parol. Tams was the assignee of Enos's interest in the rents for a valuable consideration, and all he received was paid to him with the consent of Sloat, the lessor. The mere receipt of a back rent by the assignee of a lessor, is not sufficient to raise the presumption that the assignee made a parol contract, binding himself to fulfil all the covenants contained in the lease, and making him responsible in *assumpsit* for a future breach of such covenants. It would be a still greater error, to say that the payment of rents in accordance with the terms of the lease, and to a person authorized by the lessor to receive them, is a rescission of the very instrument by which the rent was created.

There is no evidence in the cause which shows that a parol contract was ever made; none which proves that Tams knew what the terms of the lease were; none which makes it appear that the parties spoke on the subject, or that any consideration for a new contract existed; still we are asked to presume it from the partnership of the defendants and their receipt of the rents.

I am not able to say whether this is believed to be a presumption of law or fact. In our opinion it is neither the one nor the other.

The law does sometimes make presumptions without regard to the real state of the facts; presumptions which are known to be false, or just as probably false as true. But this is only when the purposes of public policy, or the great ends of justice, require it. *In fictione juris semper existat equitas.* A fiction is not used to compel what an honest man would not do on the promptings of his own conscience, nor is a promise ever implied by law without a consideration.

Presumptions of facts are *natural* inferences of one fact from another, by a process of reasoning which all intelligent minds apply to similar subjects. They rest for their correctness on common experience and observation, on the usual motives of human action, on the habits of society, and on the course of business. Taking this as the standard, there is nothing in the proved facts to make the inference, which the plaintiffs would draw, a natural one. On the contrary, as the contract for steam-power from the 20th Dec.

[Bewley *v.* Tams.]

1846, to the 16th of March, 1847, was one which the defendants *could not perform*, it is not at all probable that Tams would involve himself in a matter which could bring him nothing but trouble and loss, and be of no possible benefit to him. The presumption of fact is (in the absence of proof to the contrary), that men act in the way most to their own advantage, whenever they can do so without violating a moral obligation, and when that course is as easily taken as another.

This judgment is to be reversed because there is no cause of action set forth in the plaintiffs' declaration, nor any proved on the trial; because it was error to admit any part of the plaintiffs' evidence which the defendants objected to; because the nonsuit was improperly refused, and because the charge was based on a wrong view of the law.

Judgment reversed and *venire facias de novo* awarded.

LEWIS, J., dissented from this judgment.